MILES v. McNAUGHTON.

1 BUILDINGS—WHEN PART OF REALTY—EVIDENCE.

An intention on the part of a claimant of land, in constructing a building thereon, so to construct it as to permit of its removal as personalty in case his title to the land should be defeated, is immaterial in determining the character of the building, as a part of the realty or otherwise, in a subsequent controversy between adverse claimants under the same chain of title.

2. SAME—MORTGAGES.

A building so constructed as to be a part of the realty, and which is treated as such by the parties to a real-estate mortgage, will not be deemed to have been severed from the realty, and made personalty, as against the mortgagee, in favor of one who accepts a subsequent mortgage of the premises described in the first mortgage, "together with the building and its appurtenances," merely because the first mortgagee, to make sure of his security, takes, in addition to the real-estate mortgage, a chattel mortgage covering the building.

3. MORTGAGES—ASSIGNMENT—ESTOPPEL.

The assignee of a mortgage which is in form a mortgage on real estate, and which was recorded as such by the original mortgagee, instead of being filed as a chattel mortgage, who treats it as a real-estate mortgage in proceedings for foreclosure, is afterwards estopped from asserting the contrary.

Appeal from Chippewa; Steere, J.   Submitted November 13, 1896.   Decided December 24, 1896.

Bill by Lavinia J. Miles against John McNaughton and others to quiet title.   From a decree dismissing the bill, complainant appeals.   Reversed.

On March 15, 1888, John H. Fielding and Michael F. Fielding obtained title by warranty deed to the following described land:

"That certain piece or parcel of land situate and being in the village of Sault Ste. Marie, county of Chippewa, State of Michigan, and described as follows, to wit: All that part of private land claim number 135, bounded on the north by Franklin street, on the east by Prospect street, on the south by a line drawn parallel with Spruce street and 100 feet therefrom, and on the west by a lot formerly owned by Joseph H. Steere, being lot No. 7; all being the same property bought by William O Johnston from William F. Purdy and wife by deed recorded April 25, 1887, in Liber 19 of Deeds, on page 220."

The Fieldings purchased this land for the purpose of erecting thereon an opera house, which they erected the same year.   January 31, 1889, the Fieldings, by warranty deed, conveyed this land to defendant Clara L. Shute.   May 2, 1890, Clara L. Shute executed to complainant, who then and ever since has lived in Cleveland, Ohio, a real-estate mortgage upon this property, the consideration of which was $4,000.   The mortgage contained the usual clause conveying the tenements, hereditaments, and appurtenances.   At the same time, and for the same consideration, she executed to complainant a chattel mortgage, which covered "the building known as the 'Soo Opera House,' and the contents contained therein," specifically describing them.   It also stated that it was "collateral to a real-estate mortgage of same date by and between said parties."   January 15, 1891, Clara L. Shute executed another real-estate mortgage on this same property to W. J. Bell, for the consideration of $1,000.   The description in this

mortgage was the same as in the other, with the addition, "together with the opera house and the appurtenances therewith." This mortgage was assigned to defendant McNaughton June 22, 1891. February 13, 1891, Clara L. Shute executed a chattel mortgage to the defendant Harrietta H. Shute upon "all personal property, goods, and chattels contained in the Soo Opera House," and on the following day conveyed to her the real estate. August 15, 1894, Clara L. executed to Harrietta a bill of sale of the property described in the chattel mortgage. Complainant commenced a foreclosure suit upon her real-estate mortgage, July 6, 1893. Decree was duly entered, property sold, and the sale became absolute October 3, 1894. Soon after the sale became absolute, complainant, through her agent, took possession of the property, and has remained in possession ever since. Defendant McNaughton commenced foreclosure proceedings upon the Bell mortgage September 19, 1893. Decree was duly entered, and the sale made March 18, 1895. At the time of this sale, title under complainant's sale had become perfect. McNaughton, at the sale under his decree, requested the commissioner to sell the "opera house and appurtenances," but not the land. The sale was so made. McNaughton bid the property in for $800, and the sale was confirmed. Complainant, ascertaining the claims of McNaughton and Harrietta H. Shute, filed this bill to remove a cloud from title. Decree was entered dismissing her bill.

*Horace M. Oren* (*Moores & Goff*, of counsel), for complainant.

*Holden & Steinlein* and *McDonald & Chapman*, for defendant McNaughton.

GRANT, J. (*after stating the facts*). (1) Complainant claims that the opera house and its appurtenances were a part of the realty, and that she obtained absolute

title thereto by virtue of her foreclosure proceedings. (2) Defendant McNaughton claims that the opera house was personal property, and that he obtained title to it and its appurtenances by virtue of his foreclosure proceedings and sale. (3) Defendant Harrietta H. Shute claims title to the chairs, curtains, and stage fixings, and other property, by virtue of her chattel mortgage.

As between complainant and defendant McNaughton, two questions are presented:

1. Was the opera house personalty or part of the realty?
2. If personalty, have the defendant McNaughton and his assignor, Bell, treated the opera house as realty, so as to now estop them from asserting that it is personalty?

The opera house is 120 feet long, 49 feet wide, and 24 to 35 feet high, built of wood, close to the ground, on sills, the roof supported by the sides and iron columns running from the basement to the roof. The base of each column rests upon a stone and wood foundation. Excavations were made in the ground for the stage and for the furnace. The furnace was put in place, and the building connected with the sewers of the city. It is urged by the defendant McNaughton that the Fieldings constructed this building without a solid stone foundation because there was a cloud upon their title, and they desired to so construct it that, if their own title failed, they might remove the building as personal property. This cloud arose from the fact that some land speculators pretended to have a title to a large tract of land in the center of the city of Sault Ste. Marie, including the land in question, by reason of some Porterfield scrip, with which they claimed to have located this land. That cloud was removed by the decision of the secretary of the interior March 31, 1890, as was known to Mr. Colwell, complainant's agent and draftsman, when he drew the real-estate and chattel mortgages of complainant. While there is some evidence to sustain the claim of McNaughton that the Fieldings intended to construct the building with a

view to attempt its removal in case their title to the land was defeated, that question is of no importance in this controversy. Their acts and intentions would have no binding force upon the real owner. If the speculators had maintained their title, the Fieldings could not have removed their building if it was a part of the realty, nor would their intention have been conclusive. Under McNaughton's own theory and evidence, the building was not to be treated as personalty if the Fieldings maintained the title to the land. To put it in the strongest light for McNaughton, it is equally clear that the Fieldings intended no severance, but that the building should be permanent, and a part of the realty, if their title to the land was good, as it is that they intended, if possible, to make it personalty if their title failed. We therefore need not consider the question which would be presented if the controversy were between the Fieldings and persons whose title had been determined to be paramount to theirs. This is apparent for another reason. Clara L. Shute made written application to Mr. Colwell, complainant's agent, for this loan. Neither in her written application nor in any conversation between her and Mr. Colwell was the claim made, or even referred to, that this property was personalty. It was so constructed as to be a part of the realty. Mr. Colwell did not take the chattel mortgage for his client because he considered it personalty, but, in his own language, "to be sure and have security on everything." The inclusion of the building in the chattel mortgage did not *ipso facto* effect a severance, or, under the explanation given by Mr. Colwell, amount to one. Mr. McNaughton stands in the same position that Mr. Bell occupied. Mr. Bell knew the situation perfectly. He did not want, and declined to take, a chattel mortgage, and insisted upon a real-estate mortgage which should include the opera house. He recorded his mortgage as a real-estate mortgage; he did not file it as a chattel mortgage. He knew that complainant's security covered the entire property. His own

mortgage, which specifically mentioned the opera house, stated that it was subject to a first mortgage given to the complainant. McNaughton foreclosed his mortgage as a real-estate mortgage. In his bill he asserts that "the property was largely valuable by reason of the opera house and its appurtenances situate thereon, and that there is a prior mortgage on said property for $4,000," describing complainant's mortgage. The decree and order of sale were the usual ones in the foreclosure of real-estate mortgages, and it does not appear that there was any thought on the part of McNaughton to insist that he had a chattel mortgage upon the building until the sale. Having thus treated the property as real estate, he will not now be permitted to assert to the contrary.

No brief has been filed on behalf of the defendant Harrietta H. Shute. It is not necessary to determine in this suit what contents of the opera house are fixtures, and what are not. The law furnishes an ample remedy to try that question, and it appears from the record that Mrs. Shute already has planted a suit for that purpose.

The decree of the court below is reversed, and decree will be entered in this court in accordance with this opinion, with the costs of both courts to the complainant.

The other Justices concurred.